UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHA L. GRUBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:17-cv-01086-JMS-MJD |
| | ) |
| COOK MEDICAL TECHNOLOGIES LLC, | ) |
| and PENNY KING | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Presently pending before the Court is a Motion for Summary Judgment filed by Defendants Cook Medical Technologies, LLC[1] ("Cook") and Penny King. [Filing No. 37.] Plaintiff Marsha Grubb alleges that Cook terminated her employment in violation of the Americans with Disabilities Act and state law. [Filing No. 1.] She further alleges that Ms. King battered her, causing Ms. Grubb severe emotional distress. [Filing No. 1.] Defendants now seek summary judgment on all claims, arguing that Ms. Grubb failed to produce any evidence in support of her claims. [Filing No. 38 at 2.] For the following reasons, the Court grants the Motion for Summary Judgment. [Filing No. 37.]

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] In its brief in support of summary judgment, Cook states that Ms. Grubb "incorrectly identified…Cook Medical Technologies, LLC" as the defendant in this action. Cook claims that the "correct name" of Ms. Grubb's employer is Cook Incorporated. [Filing No. 38 at 1.] Cook does not make a motion to the Court to substitute the alleged proper party, so the Court simply notes here Cook's clarification.

1

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. Gekas v. Vasilades, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. Nelson v. Miller, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws

all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

Ms. Grubb has not responded to Cook's Motion, and the time to do so has passed. The Court may therefore summarily rule on Cook's Motion, pursuant to Local Rule 7-1(c)(4), as Ms. Grubb's silence results in waiver of any argument in opposition to Cook's Motion. *See Bonte v. U.S. Bank, N.A., *624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.") Furthermore, Ms. Grubb's lack of response means that she concedes Cook's version of events, and the Court resolves the Motion on the evidence submitted by Cook. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("Failure to respond by the nonmovant as mandated by the local rules results in an admission."). The Court continues to apply the above-articulated summary judgment standard, but Ms. Grubb's failure to comply with the Local Rules in this respect "reduc[es] the pool" from which the facts and inferences may be drawn. *See Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

**A. Cook's Policies and Procedures**

Cook is a manufacturer of medical devices located in Bloomington, Indiana. [Filing No. 1 at 3.] Cook contends that it is an equal opportunity employer and does not discriminate against its employees on the basis of disability. [Filing No. 38 at 2.] It has supplied portions of its employee manual detailing its anti-discrimination policies. The employee manual contains an Equal Employment Opportunity policy which provides that:

> Cook is an equal opportunity employer. We believe in the dignity and worth of every individual. We will not discriminate against or favor any employee or applicant, or make any decision or take any action, because of race, color, religion, sex, national origin, age, sexual orientation, *disability*, veteran status, or any other characteristic protected by law.

[Filing No. 37-3 at 2 (emphasis added); Filing No. 37-6 at 6; *see* Filing No. 37-2 at 5.] Additionally, Cook's employee manual also includes an avenue by which employees may communicate work-related concerns to the appropriate individuals:

> Cook encourages employees to communicate with management concerning work- related issues. If an employee has a work-related issue, the employee should bring it to the attention of a personnel advisor, a member of management, or Human Resources. Cook will take the appropriate steps to investigate and resolve the issue.

[Filing No. 37-6 at 8.] Cook's employee manual also provides for the following progressive disciplinary process:

> When a rule or policy has been broken, or an employee has exhibited unacceptable behavior, disciplinary action to prevent a recurrence is required. Cook generally recognizes four steps in the disciplinary process:
>
> 1. First occurrence: documented verbal warning
> 2. Second occurrence: written warning
> 3. Third occurrence: formal written warning
> 4. Fourth occurrence: suspension without pay or termination
>
> Management reserves the right, at its discretion, to bypass any of the above steps and utilize a higher level of discipline for any given occurrence or accumulation of occurrences. The severity of discipline will depend upon the severity of the

4

occurrence as well as the employee's work history.

[[Filing No. 37-6 at 31-32](#).]

### B. Ms. Grubb's Employment at Cook

Ms. Grubb began work on September 23, 2013 as an assembler in the dilators department, a position she held throughout her employment at Cook. [[Filing No. 37-1 at 6-8](#); [Filing No. 37-4](#).] Ms. Grubb's employment was at-will and, therefore, Cook could terminate her employment "at any time and for any reason, with or without cause or notice." [[Filing No. 37-4 at 1](#).] At the time of her hiring, Ms. Grubb signed an Acknowledgement of Receipt of an Agreement of Cook Employee Manual. [Filing No.37-3 at 1; [Filing No. 37-5](#).] Cook employed "group leaders," who were responsible for supervising the employees on the production floor and reporting infractions to the management team. [[Filing No. 37-2 at 3](#).] Group leaders did not have the ability to discipline the employees they supervised or recommend disciplinary actions against them. [[Filing No. 37-2 at 3](#).] Ms. Grubb's group leader was Ms. King. [[Filing No. 37-1 at 10](#).]

As an assembler, Ms. Grubb would "cut [dilators] to length" and "tip them per the specifications" given. [[Filing No. 37-1 at 7](#).] "Tipping" is a process that can be performed by hand or machine, in which the assembler places the dilators into a mold and applies heat to manipulate them into the correct size. [[Filing No. 37-1 at 7-10](#).] Ms. Grubb originally started as a hand tipper and was moved by Ms. King to a tipping machine on March 31, 2014. [[Filing No. 37-1 at 10](#), 19; [Filing No. 37-2 at 12](#); [Filing No. 37-7 at 1](#).]

### C. Ms. Grubb's Disability and Filing of her Worker's Compensation Claim

Ms. Grubb alleges that she suffers from cervical radiculitis, which is an ergonomic injury to the neck and shoulders. [[Filing No. 1 at 3](#).] Ms. Grubb states that her symptoms began on January 21, 2015, when she woke up "with [her] chin on [her] chest" and "could not hold [her]

5

head up." [Filing No. 37-1 at 19-20.] She describes the pain as "a tightness, a numbness and an achiness that runs up the back . . . of [her] neck and across [her] shoulders." [Filing No. 37-1 at 19.] Ms. Grubb alleges that "sitting at work working" would make her symptoms worse, due to "the repetitive motion of always looking down." [Filing No. 37-1 at 20.] Ms. Grubb's head would be in the same "looking-down" position both as a hand tipper and on the tipping machine. [Filing No. 37-1 at 20-21.] Ms. Grubb also testified that it was possible for someone to mistakenly think she was sleeping due to the position of her head while she worked. [Filing No. 37-1 at 28-30; Filing No. 36.] On February 11, 2015, several employees noticed that Ms. Grubb was having issues with her neck, and Tony Koontz, a manager for Cook, sent Ms. Grubb to Cook's human resources department to submit worker's compensation paperwork. [Filing 37-1 at 23-24; Filing No. 37-7 at 1.] Ms. Grubb filled out paperwork for her worker's compensation claim on February 13, 2015. [Filing No. 37-7 at 1.] Ms. Grubb ultimately received worker's compensation benefits totaling approximately $22,000.00. [Filing No. 37-1 at 26.]

On March 10, 2015, Ms. Grubb submitted a "reasonable accommodation request" for an ergonomic chair for her work station. [Filing No. 37-7 at 2.] Cook provided Ms. Grubb with the requested chair, and Ms. Grubb did not request any further accommodations from Cook for her neck condition. [Filing No. 37-1 at 25-26.] On September 17, 2015, Ms. King temporarily moved Ms. Grubb back to hand tipping. [Filing No. 37-1 at 12-13; Filing No. 37-7 at 2.] This exacerbated Ms. Grubb's condition, and she was moved back to machine tipping after submitting a medical letter. [Filing No. 37-1 at 12-13; Filing No. 37-7 at 2-3.]

### D. Ms. Grubb's Disciplinary Issues and Termination

On October 12, 2015, Ms. King witnessed Ms. Grubb sitting at her work station with her eyes closed and believed her to be asleep. [Filing No. 37-2 at 17.] As a result, Ms. King reported

6

Ms. Grubb to Kim Nethery, Ms. King's supervisor. [[Filing No. 37-2 at 11](), 17.] Cook then issued Ms. Grubb a verbal warning stating that "[o]n 10/12/2015 Penny King (GL) caught Marsha with her eyes closed and told her to wake up," and indicating to Ms. Grubb that she "[m]ust keep eyes open." [[Filing No. 37-3 at 1](); [Filing No. 37-10]().] The next day, on October 13, 2015, Ms. King again saw Ms. Grubb asleep at her tipping machine. [[Filing No. 37-2 at 20-21]().] Ms. Grubb was reprimanded through an informal written warning on October 14, 2015 stating, "On 10/13/2015, Marsha was seen and addressed by Penny King to open her eyes. Marsha was setting [sic] at her tipping machine with her eyes closed." [[Filing No. 37-3 at 2](); [Filing No. 37-11]().] The informal written warning advised Ms. Grubb that she "[m]ust keep eyes open at all times while in production." [[Filing No. 37-11]().]

On November 2, 2015, Ms. King again saw Ms. Grubb asleep at the tipping machine and reprimanded her through a formal written warning. [[Filing No. 37-3 at 2](); [Filing No. 37-12]().] This occurred again on November 23, 2015, and Cook issued her another written warning and suspended her for three days. [[Filing No. 37-3 at 2](); [Filing No. 37-13](); *see* [Filing No. 37-2 at 23]().] Three weeks later, on December 15, 2015, Ms. King again saw Ms. Grubb "with her eyes closed and appear[ing] to be sleeping" while sitting at her tipping machine. [[Filing No. 37-3 at 2](); [Filing No. 37-14]().] This was Ms. Grubb's fifth and final violation for sitting at her tipping machine with her eyes closed, and Cook, in accordance with its disciplinary procedures, decided to terminate her employment. [[Filing No. 37-9](); [Filing No. 37-14]().]

Ms. Grubb denies that she was ever asleep while on the job, and testified that she could not remember a time when she was either hand tipping or using the tipping machine with her eyes closed for an extended period of time. [[Filing No. 37-1 at 27]().] Ms. King genuinely believed Ms. Grubb was sleeping on each of the occasions that led to Ms. Grubb's termination. [Filing No. 37-

7

2 at 27-28.] On each occasion, she would say Ms. Grubb's name loudly and would observe Ms. Grubb at her work station long enough to confirm that she was asleep. [Filing No. 37-2 at 28.] Sometimes Ms. Grubb would respond after Ms. King said her name once, and sometimes she did not until after Ms. King said her name several times. [Filing No. 37-2 at 30.] Ms. Grubb conceded that, even though she at times heard Ms. King say her name, she failed to respond to Ms. King. [Filing No. 37-1 at 31.] Ms. King also observed Ms. Grubb sleeping on several other occasions and chose not to report her to Ms. Nethery or anyone else at Cook. [Filing No. 37-2 at 29.]

### E. Battery Allegations

Ms. Grubb alleges in her Complaint that "[s]ometime on or about March 16, 2015, [Ms. King] had put her hand under Plaintiff's chin and the other hand on the back of Plaintiff's head, 'pulled her head up' and said to the Plaintiff: 'hold your head up'!" [Filing No. 1 at 4; Filing No. 37-1 at 36.] Ms. Grubb alleges that Ms. King did the same thing again on April 14, 2015. [Filing No. 1 at 4; Filing No. 37-1 at 38-39.] Ms. Grubb was not injured and did not seek medical treatment as a result of Ms. King's alleged touching of her head on these occasions. [Filing No. 37-1 at 38-40.] While Ms. Grubb states that she contacted human resources at Cook after these incidents and left a message, there are no records of these calls, human resources did not call Ms. Grubb back, and Ms. Grubb did not follow up with them about her messages. [Filing No. 37-1 at 40-41.] Additionally, Ms. Grubb never reported these incidents to anyone at Cook, including Ms. Nethery or Ms. Nethery's supervisor, Mr. Koontz. [Filing No. 37-1 at 40-41.]

Ms. Grubb filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 2, 2016, alleging that she was terminated as a result of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12010, et seq. ("the ADA"). [Filing No. 37-15.] The EEOC issued Ms. Grubb a Dismissal and Notice of Suit Rights letter on January 10, 2017. [Filing

8

No. 37-16.]

Ms. Grubb filed the instant Complaint against Cook and Ms. King on April 5, 2017. [Filing No. 1.] She asserts the following claims: (1) wrongful termination against Cook in violation of the ADA; (2) retaliatory discharge under state law against Cook; (3) negligent supervision under state law against Cook for failing to adequately and properly supervise Ms. King; and (4) state law battery and intentional infliction of emotional distress claims against Ms. King and Cook. Defendants move for summary judgment on all of Ms. Grubb's claims. [Filing No. 37.] The Court addresses each in turn.

### III.
#### DISCUSSION

**A. ADA Claim**

Ms. Grubb alleges that she was terminated due to her disability and that Cook's stated reasons for her termination were pretextual. [Filing No. 1 at 5-6.] Cook argues that Ms. Grubb was not terminated because of her disability, and that the evidence shows that Ms. Grubb was terminated for failing to meet Cook's legitimate expectation that employees remain awake while at work. [Filing No. 38 at 10.]

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, employers may not discriminate against employees that have either actual disabilities, *Id.* § 12102(1)(A), or perceived disabilities, *Id.* § 12102(1)(C). "[A]ll discrimination claims present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the

9

[plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint School District*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

A plaintiff can put forward evidence of discrimination in the form of direct or indirect proof. *Dickerson v. Bd. of Trustees of Cmty. Coll.*, 657 F.3d 595, 601 (7th Cir. 2011) In cases that lack sufficient direct evidence, courts may apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell-Douglas* framework is "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence—evidence that similarly situated employees not in the plaintiff's protected class were treated better—would permit a jury to infer discriminatory intent." *Ferrill*, 860 F.3d at 499-500 (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015)).

A plaintiff need not show that she was meeting her employer's expectations "when [s]he alleges that other employees were also not meeting the employer's expectations but the employer selectively punished the plaintiff, or punished the plaintiff more severely, for discriminatory reasons." *McNair v. Bonaventura*, 46 Fed. Appx. 849, 852 (7th Cir. 2002). If the plaintiff meets that burden, then the employer must "set forth a legitimate nondiscriminatory reason for [the adverse employment action] which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007) (citation and quotation omitted). If the employer satisfies its burden, the burden shifts back to the plaintiff who must then prove that the proffered reason was pretextual. *Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir. 2001) (citation omitted).

10

Cook argues that, considering all direct and indirect evidence, Ms. Grubb cannot establish an ADA violation. [Filing No. 28 at 9-10.] The Court stresses that because Ms. Grubb has not responded to the Motion for Summary Judgment, she has waived all argument in opposition, and she has conceded Cook's version of the facts as being true.

The Court sees no "smoking gun" evidence of discrimination in this case, so it turns to the *McDonnell-Douglas* framework to evaluate the claims put forward by Ms. Grubb. Under that framework, Ms. Grubb may establish a *prima facie* case of discrimination by showing that: (1) she is disabled under the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Dickerson*, 657 F.3d at 601.

Cook does not dispute the first and third elements of the test—that Ms. Grubb suffers from a disability, or that her termination constituted an adverse employment action. The Court therefore turns to the second element of the framework—whether Ms. Grubb was meeting her employer's legitimate employment expectations.

Cook argues that it has a legitimate expectation that employees remain awake while working. [Filing No. 38 at 10.] Courts in the Seventh Circuit have routinely held that staying awake at work is a legitimate employment expectation, and this Court agrees. *See, e.g.*, *Green v. U.S. Steel Corp.*, 2006 WL 2949531, *5 (N.D. Ind. Oct. 12, 2006) (citing *Coco v. Elmwood Care*, 128 F.3d 1177, 1179 (7th Cir. 1997)) (finding that plaintiff did not meet his employer's legitimate expectations when he fell asleep on the job); *Perry v. Pierce Chem. Co.,* 2002 WL 992658, *1 (N.D. Ill. May 14, 2002) ("Sleeping on the job does not meet an employer's legitimate expectations."). The undisputed evidence shows that Ms. Grubb was disciplined on four separate occasions for sleeping, or appearing to sleep, at her tipping machine before being terminated

following the fifth occasion.  [Filing No. 37-10; Filing No. 37-11; Filing No. 37-12; Filing No. 37-13; Filing No. 37-14.]  The Court notes that even if Ms. Grubb was not actually sleeping, Cook has put forward undisputed evidence that Ms. King believed Ms. Grubb to be sleeping.  Therefore, even if Ms. Grubb was actually awake (but perhaps non-responsive) on any of these occasions, the Court's analysis would remain unchanged.  Cook has presented undisputed evidence that it believed Ms. Grubb to be sleeping, and therefore not meeting Cook's legitimate employment expectations.

Even if Ms. Grubb could establish the second element of the *prima facie* analysis, she cannot establish the fourth—that a similarly situated, non-disabled employee was treated more favorably.  As pointed out by Cook, Ms. Grubb has provided no evidence whatsoever as to any other employee.  Ms. Grubb's claim therefore fails as a matter of law.  *See, e.g., Maxieson v. Capital Improvement Bd.,* 2000 WL 1469442, *3 (S.D. Ind. Sept. 18, 2000) ("With no evidence whatsoever of similarly situated employees that received favorable treatment—i.e., that were allowed to remain employed after being caught sleeping on the job— [Plaintiff's] race and sex discrimination claims fail as a matter of law.").

For the sake of completeness, the Court notes that even if the Court had concluded that Ms. Grubb had met her *prima facie* burden, Cook's undisputed evidence establishes that the decision to terminate Ms. Grubb's employment was based on a legitimate, non-discriminatory reason:  Ms. Grubb's failure to adhere to Cook's policy of remaining awake while on the job.  Ms. Grubb has put forward no evidence that this reason was pretextual.  Pretext is defined as "a dishonest explanation, a lie rather than an oddity or an error." *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015).  So, as described above, even if Ms. Grubb only *appeared* to be sleeping, but was not actually asleep, the critical inquiry is whether Ms. King and Cook honestly believed that

12

Ms. Grubb was sleeping. Cook has offered evidence that it did, and Ms. Grubb has offered no contradictory evidence.

For all of these reasons, the Court concludes that Cook is entitled to summary judgment on Ms. Grubb's ADA claim.

### B. State Law Retaliatory Discharge

As discussed above, the Court has granted summary judgment to Cook on Ms. Grubb's ADA claim, the only one she raises pursuant to federal law. All of her remaining claims are raised pursuant to Indiana state law. The district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction....") (citation and quotation omitted). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Here, the Court finds that, in the interest of judicial economy, it can exercise jurisdiction over Ms. Grubb's state law claims. "[W]hen substantial judicial resources have already been committed, sending the case to another court will cause a substantial duplication of effort." *Wright*, 29 F.3d at 1251 (citation and internal quotation omitted). This litigation has been pending since 2017, and the parties have already

13

engaged in discovery. Having committed judicial resources to this case, it would be futile and inefficient to have the parties start over in another court system.

Ms. Grubb alleges that she was terminated in retaliation for seeking the assistance of the Worker's Compensation Board. [Filing No. 1 at 8-9.] Cook argues that Ms. Grubb has failed to produce any evidence that directly or indirectly supports an inference of causation between her filing a worker's compensation claim and her termination. [Filing No. 38 at 13.]

Retaliation claims based on the filing of a worker's compensation claim were recognized as actionable by the Indiana Supreme Court in *Frampton v. Central Ind. Gas Co., 260 Ind. 249, 297 N.E.2d 425, 428 (Ind. 1973)* (holding that a plaintiff who demonstrates that she was discharged by an employer for filing a claim under Indiana's Workmen's Compensation Act "has stated a claim upon which relief can be granted"). The court recognized that "under ordinary circumstances, an employee at will may be discharged without cause," but "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Id.* at 428. To succeed on a claim of retaliatory discharge, a plaintiff "must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext." *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind. Ct. App. 1999); *see also Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011).

Ms. Grubb has presented no evidence to support her retaliation claim. The undisputed facts demonstrate, as described above, that Ms. Grubb was terminated for the non-retaliatory reason of repeatedly falling asleep at work. Moreover, Cook has presented evidence that it encouraged Ms. Grubb to file her worker's compensation claim, and it satisfied her requests for accommodation of

14

her disability after her claim was filed. After Ms. Grubb appeared to be injured while at work, a Cook supervisor instructed her to file a worker's compensation claim. [Filing No. 37-1 at 23-24.] In March of 2015, Ms. Grubb made a reasonable accommodation request for an ergonomic chair, and Cook complied by providing her with the chair. [Filing No. 37-1 at 25-26.] Additionally, Cook restricted her work activities in accordance with her medical needs. [Filing No. 37-1 at 12-13.] Moreover, there is no evidence of suspicious timing of the termination. Cook did not terminate Ms. Grubb's employment until ten months after she filed her worker's compensation claim. *See, e.g.*, *Goetzke v. Ferro Corp.*, 280 F.3d 766, 775 (7th Cir. 2002) (holding that a one-year passage of time between submission of worker's compensation claim and termination "does not create an inference of retaliation"); see also *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (holding that, in the context of a Title VII retaliation claim, an eight-month lapse of time between the protected activity and termination did not raise an inference of a causal connection).

In short, Ms. Grubb has put forward no evidence connecting her discharge to the filing of her worker's compensation claim. Therefore, Ms. Grubb's retaliatory discharge claim fails as a matter of law, and Cook is entitled to summary judgment.

**C. Battery**

Ms. Grubb alleges that Ms. King twice battered her while working at Cook, by "pulling her head up." [Filing No. 1 at 6.] In response, Defendants argue that Ms. Grubb has failed to identify any evidence supporting these allegations and that the undisputed evidence contradicts her allegations. [Filing No. 38 at 15.]

To succeed on a battery claim, a plaintiff most show (1) that the alleged batterer acted intending to cause a harmful or offensive contact with the person of the other or a third person, or

15

that the plaintiff had an imminent apprehension of such a contact; and (2) that a harmful contact with the person of the other directly or indirectly resulted. *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007).

Even assuming that Ms. King touched Ms. Grubb in the manner that Ms. Grubb claims, the facts alleged by Ms. Grubb would not satisfy all of the elements required to prove battery. Ms. Grubb has provided no evidence demonstrating that Ms. King intended to cause harm or that the contact was in fact harmful, as required under Indiana law. *Mullins*, 865 N.E.2d at 661 (citing Restatement (Second) of Torts § 13). Ms. Grubb puts forward no evidence that Ms. King acted intending to cause her harm, and rather during her deposition, Ms. Grubb stated that she and Ms. King "got [along] fine." [Filing 37-1 at 57.] Ms. Grubb's testimony both stating that she was not injured by the alleged contact and that she did not seek medical treatment as a result of the contact contradicts her claim that the alleged conduct constituted a harmful contact. [Filing No. 37-1 at 40-41.]

Therefore, Defendants are entitled to summary judgment on Ms. Grubb's battery claim.

**D. Intentional Infliction of Emotional Distress**

Ms. Grubb argues that Ms. King battered her with the intention of causing her to suffer severe emotional distress and that the battery did cause severe emotional distress. [Filing No. 1 at 7.] Defendants argue that the alleged battery did not occur and that, even if it had, the undisputed evidence shows that Ms. Grubb did not suffer from any emotional distress. [Filing No. 38 at 17.]

To prove her claim for intentional infliction of emotional distress, Ms. Grubb must establish that Defendants: (1) engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013) (citing *Cullison*

16

*v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)). The standard under Indiana law for establishing extreme or outrageous conduct in stringent. *Westminster*, 992 N.E.2d at 870. Outrageous conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Bradley v. Hall*, 720 N.E.2d 747, 752-53 (Ind. Ct. App. 1999)).

Even assuming that a battery occurred, Ms. Grubb's claim nonetheless fails. Ms. Grubb has presented no evidence to establish that Ms. King intended to cause Ms. Grubb emotional distress. Nor is there any evidence that Ms. Grubb did in fact suffer severe emotional distress. As discussed above, Ms. Grubb's testimony stating that "[she] got along with [Ms. King] when [she] left" and her indication that she had not "suffered any sort of psychological or physical symptoms from Ms. King touching her," indicates that neither element is met here. [Filing 37-1 at 66; Filing No 37-1 at 54.]

Defendants are therefore entitled to summary judgment as a matter of law on this claim.

### E. Negligent Hiring, Supervision, and Retention

Ms. Grubb asserts that "Cook knew or should have known that King was an unfit and/or incompetent employee whose unfitness and/or incompetence created a particular risk of harm to Cook's employees . . . ." [Filing No. 1 at 8.] Based on these allegations, Ms. Grubb argues that due to Cook's negligence, she "has been severely damaged physically and emotionally." [Filing No. 1 at 8.] Cook argues that Ms. Grubb has presented no showing that Cook was ever made aware of Ms. King's touching of Ms. Grubb. [Filing No. 38 at 20.] And Cook argues that Ms. Grubb has offered no evidence that Ms. King habitually endangered Cook employees or that Cook knew or should have known Ms. King conducted herself in in that manner. [Filing No. 38 at 20.]

17

To prevail on a negligence claim, "a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004) (citing *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)). Summary judgment is rarely appropriate in negligence cases, as they are particularly fact-sensitive. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). "Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim." *Haire v. Parker*, 957 N.E.2d 190, 195 (Ind. 2011) (citing *Rhodes,* 805 N.E.2d at 385).

Indiana recognizes a cause of action against employers for negligent hiring, supervision, or retention. *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 609 (7th Cir. 2008) (citing *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994)). "Indiana has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort, under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee." *Hansen*, 551 F.3d at 609 (citing *Konkle v. Henson*, 672 N.E.2d 450, 454-55 (Ind. Ct. App. 1996)).

As the Seventh Circuit acknowledged in *Hansen*, Indiana Courts have applied two different standards for holding an employer liable for negligent hiring, retention, and supervision: one requiring actual knowledge of misconduct, and one imposing liability if the employer should have known of misconduct. 551 F.3d at 609 (citing *Levinson*, 644 N.E.2d at 1269 (holding that to prevail on such a claim "the plaintiff must show that the defendant employer negligently retained an employee who the defendant knew was in the habit of misconducting himself"); *Grzan v. Charter Hosp. of Nw. Ind.,* 702 N.E.2d 786, 793 (Ind. Ct. App. 1998) (holding that a defendant

18

must have known or "had reason to know" of the misconduct and failed to take appropriate action)).

This Court need not determine which of those two standards applies here, because Ms. Grubb has presented no evidence that would satisfy either. In her Complaint, Ms. Grubb alleges that Ms. King "touched [her] in a harmful and offensive manner to wit: putting her hand under [Ms. Grubb's] chin and the other hand on the back of [Ms. Grubb's] head and pulling her head up" and that Cook was responsible for Ms. King's actions. [Filing No. 1 at 6.] But, as described above regarding Ms. Grubb's other claims, Ms. Grubb has not put forward any evidence as to what injury she suffered as a result of the alleged misconduct by Ms. King. And Ms. Grubb has put forward to evidence in support of her claim that Cook either knew or should have known about any misconduct.

Defendants are therefore entitled to summary judgment on this claim.

## IV.
### CONCLUSION

For the reasons described above, Defendants are entitled to summary judgment on all of Ms. Grubb's claims. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment. [37]

Final judgment shall issue by separate order.

Date: 5/29/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution by ECF only to all counsel of record.**